**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **JAY GROSS** | * | |
| 1321 Rhode Island Avenue | * | |
| Washington D.C. 20005 | * | |
| | * | |
| **11ᵗʰ PROPERTY GROUP, LLC.** | * | |
| 1321 Rhode Island Avenue | * | |
| Washington D.C. 20005 | * | |
| | * | |
| **7 GRANT CIRCLE NW LLC** | * | |
| 1321 Rhode Island Avenue | * | |
| Washington D.C. 20005 | * | |
| | * | Case No. _____ |
| **14 GRANT CIRCLE NW LLC** | * | |
| 1321 Rhode Island Avenue | * | |
| Washington D.C. 20005 | * | |
| | * | |
| **15 GRANT CIRCLE NW LLC** | * | |
| 1321 Rhode Island Avenue | * | |
| Washington D.C. 20005 | * | |
| | * | |
| **1524 OGDEN ST. NW LLC** | * | |
| 1321 Rhode Island Avenue | * | |
| Washington D.C. 20005 | * | |
| | * | |
| **4511 IOWA AVE. NW LLC** | * | |
| 1321 Rhode Island Avenue | * | |
| Washington D.C. 20005 | * | |
| | * | |
| **1201 KENYON ST. NW LLC** | * | |
| 1321 Rhode Island Avenue | * | |
| Washington D.C. 20005 | * | |
| | * | |
| Plaintiffs | * | |
| | * | |
| v. | * | |
| | * | |
| **STEPHEN C. WRIGHT** | * | |
| 6 Grant Circle, NW | * | |
| Washington D.C. 20011 | * | |
| | * | |
| **THOMAS M. WOODRUFF** | * | |
| 6 Grant Circle, NW | * | |
| Washington D.C. 20011 | * | |
| | * | |

**CENTRAL PROPERTIES, LLC**          \*
1353 V St NW,                        \*
Washington DC 20009                  \*
                                     \*
**LEO A DALY COMPANY**               \*
1201 Connecticut Ave NW              \*
Washington DC 20036                  \*
                                     \*
**OSCAR BEISERT**                    \*
432 Upshur Street NW                 \*
Washington D.C. 20011                \*
                                     \*
**OFF BOUNDARY PRESERVATION**        \*
**BRIGADE**                          \*
764 Fairmont Street, NW              \*
Washington D.C. 20011                \*
                                     \*
    Defendants   \*
                                     \*

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## COMPLAINT

Plaintiffs, Jay Gross, 11th Property Group, LLC. ("11th Property Group"), 7 Grant Circle NW

LLC, 14 Grant Circle NW LLC, 15 Grant Circle NW LLC, 1524 Ogden St. NW LLC, 4511 Iowa

Ave NW LLC, and 1201 Kenyon St. NW LLC, by undersigned counsel, state as follows for their

claims and causes of action against the Defendants, Stephen Wright ("Wright"), Thomas Woodruff

("Woodruff"), Central Properties, LLC ("Central Properties"), Leo A Daly Company ("Leo A

Daly"), Oscar Beisert ("Beisert"), and Off Boundary Preservation Brigade ("Off Boundary").

## INTRODUCTION

1.    This case involves the Defendants' systematic disruption of the Plaintiffs' business all over

the District of Columbia. Defendant Wright is an architect and the managing partner of architecture

firm Leo A Daly's Washington D.C. office. Wright has stated as his personal mantra: "I have little

tolerance for people who hold onto the status quo. Change is neither good nor bad — it's

inevitable." Defendant Woodruff is a realtor and partner of Central Properties in Washington D.C.,

receiving his income from the purchase and sale of properties in the District. Wright and Woodruff reside together at 6 Grant Circle.

2.      Jay Gross, 11th Property Group and other Plaintiffs renovate blighted properties in Washington D.C. In the fall of 2014, Mr. Gross began purchasing properties in the Grant Circle neighborhood of Petworth, and purchased 7 Grant Circle, adjacent to Wright and Woodruff. Wright and Woodruff, respectively a preeminent property renovator and real estate agent, viewed this young man and his business as a direct threat to their business in their own neighborhood: to Woodruff, Mr. Gross was intruding upon the commissions in his turf by purchasing directly from homeowners; to Wright, Mr. Gross was intruding on his pool of renovation projects. Woodruff and Wright formulated a plan to snuff out Plaintiffs' competing business by freezing permitting and renovation at all of Plaintiffs' property all over D.C.

3.      First, Wright and Woodruff, with no background nor any previous interest in historic preservation, and through the assistance and encouragement of Beisert, championed a sham historic preservation campaign with the sole purpose of obstructing and delaying Plaintiffs' work in Grant Circle. Blatantly inconsistent with his own mantra that he espouses change and has "little tolerance for people who hold onto the status quo," Wright (who does not even own property in Grant Circle) suddenly began covertly arranging neighborhood meetings and banging the drum of preservation, inciting feelings of NIMBYism within his neighbors and fomenting neighborhood animosity towards Mr. Gross and his businesses. Wright and Woodruff hosted secret, exclusive Advisory Neighborhood Committee ('ANC") meetings to demonize Mr. Gross and his business, and spurred a group of their Grant Circle neighbors to support their application to designate Plaintiff's property as an historic landmark and their application to designate the homes and structures along the

periphery of Grant Circle as an historic district. Meanwhile, Wright and Woodruff used their professional clout to in any way impede or halt progress at 7 Grant Circle, illegally and covertly lobbying D.C. Office of Planning employees to support their sham historic preservation effort and making false complaints about building violations at 7 Grant Circle. Wright and Woodruff constantly sought the revocation of permits at 7 Grant Circle and demanded and complained about its engineering plans, reporting false and groundless complaints to permit-issuing officials. Woodruff was also simultaneously contacting his neighbors who might sell to Mr. Gross and Plaintiffs, attempting to coerce them to sell their houses through him or to him instead. Wright and Woodruff used lies about Plaintiffs in order to coerce their local ANC and D.C. Office of Planning employees to hold multiple meetings directly relating to Plaintiffs' rights in their property. However, Wright and Woodruff ensured that Plaintiffs received no notice about these covert meetings, and despite being entitled to proper notice under D.C. law, due to Wright and Woodruff's interference, Plaintiffs were entirely left in the dark during the secret discussions between Wright and Woodruff and D.C. government employees.

4.      Wright and Woodruff succeeded in their first step, and their historic district nomination was rammed through with unprecedented speed. However, their much more transparent landmark application for Mr. Gross's property was denied by the Historic preservation Review Board ("HPRB") (who noted the suspicious fact that Wright and Woodruff had failed to designate their own adjacent, connected and identical and rehabilitated property as a landmark in kind). In truth, Woodruff and Wright never expected their landmark nomination to succeed, but merely to abuse the preservation process by obstructing and delaying work at 7 Grant Circle as long as possible. In

Wright's own words, the landmark application was all about "timing," that is, delaying the permitting process.

5.      Wright and Woodruff used the historic preservation process to slow the permitting process while closely monitoring the progress of permitting at 7 Grant Circle at the DCRA. Wright and Woodruff's second step was to spearhead an effort to attack Plaintiffs' projects all over the District. Beginning in January, 2015, Woodruff and Wright covertly corresponded with D.C. Office of Planning employees, at first making false and disparaging claims about Mr. Gross's work in Grant Circle, and then expanding their complaints to Mr. Gross's work in other neighborhoods of the District. Woodruff and Wright delivered multiple emails to both the permit-issuing DCRA and the DC Office of Planning, claiming false code violations by Plaintiffs. Woodruff and Wright sought out Plaintiffs' neighbors all over D.C. and made false claims about Plaintiffs.  Soon, with Wright and Woodruff's whispers in their ears, Plaintiffs' neighbors all around D.C. began making the same objections to Plaintiffs' projects that Plaintiffs suffered from Wright and Woodruff in Grant Circle, and Mr. Gross suddenly encountered animosity from ANC's completely separate from Grant Circle.

6.      Though Wright and Woodruff hide behind the false battle cry of preservation, their true motives are clear: Mr. Gross and his businesses are upstart competition in their fields, and Wright and Woodruff, spearheading the Defendants, have used all means to harm Mr. Gross' business interests and to eliminate that competition.

## THE PARTIES AND KEY CORPORATIONS

7.      Jay Gross is and at all relevant times was a resident of the District of Columbia with his primary address at 1321 Rhode Island Avenue, Washington D.C. 20005.

8.      11th Property Group is a Washington D.C. corporation having its principal place of business at 1321 Rhode Island Avenue, Washington D.C. 20005.

9.      7 Grant Circle NW LLC is a Washington D.C. limited liability company having its principal place of business at 1321 Rhode Island Avenue, Washington D.C. 20005. Mr. Gross is the sole member of 7 Grant Circle NW LLC.

10.      14 Grant Circle NW LLC is a Washington D.C. limited liability company n having its principal place of business at 1321 Rhode Island Avenue, Washington D.C. 20005. Mr. Gross is the sole member of 14 Grant Circle NW LLC .

11.      15 Grant Circle NW LLC is a Washington D.C. limited liability company having its principal place of business at 1321 Rhode Island Avenue, Washington D.C. 20005. Mr. Gross is the sole member of 15 Grant Circle NW LLC .

12.      4511 Iowa NW LLC is a Washington D.C. limited liability company  having its principal place of business at 1321 Rhode Island Avenue, Washington D.C. 20005. Mr. Gross is the sole member of 4511 Iowa NW LLC .

13.      1201 Kenyon NW LLC is a Washington D.C. limited liability company  having its principal place of business at 1321 Rhode Island Avenue, Washington D.C. 20005. Mr. Gross is the sole member of 1201 Kenyon NW LLC .

14.      1524 Ogden NW LLC is a Washington D.C. limited liability company  having its principal place of business at 1321 Rhode Island Avenue, Washington D.C. 20005. Mr. Gross is the sole member of 1524 Ogden NW LLC .

15.      Wright is and at all relevant times was a resident of the District of Columbia with his primary address at 6 Grant Circle NW, Washington D.C. 20011.

16.     Woodruff is and at all relevant times was a resident of the District of Columbia with his primary address at 6 Grant Circle NW, Washington D.C. 20011. Woodruff owns the real property located property at 6 Grant Circle, NW Washington D.C. 20011.

17.     Central Properties is a Washington D.C. limited liability company having its principal place of business at 1353 V St NW, Washington, DC 20009. Central Properties' registered agent for the District of Columbia is Paul Sliwka, 1353 V St. NW, Washington D.C. 20009.

18.     Leo A Daly is a Nebraska corporation having its principal place of business at 8600 Indian Hills Drive, Omaha, Nebraska 68114, and an office at 1201 Connecticut Ave NW, Washington, DC 20036. Leo A Daly is a leading, international architecture, planning, engineering, and interior design firm, employing over 800 architects, planners, engineers, and interior designers in 31 offices worldwide. Leo A Daly's registered agent for the District of Columbia is National Registered Agents Inc., 1015 15th St. NW, Suite 1000, Washington D.C. 20005.

19.     Beisert is and at all relevant times was a resident of the District of Columbia with his primary address at 432 Upshur Street NW, Washington D.C. 20011.

20.     Beisert's organization, Off Boundary, is a Washington D.C. non-profit corporation having its principal place of business at 764 Fairmont Street, NW, Washington D.C. 20011. Off Boundary's registered agent for the District of Columbia is Beisert,764 Fairmont Street, NW, Washington D.C. 20011.

## JURISDICTION AND VENUE

21.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because this matter involves a cause of action under 15 U.S.C. § 15 for a violation of the Clayton Antitrust Act.

22.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(1) because all defendants are residents of this judicial district.

23.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred, and a substantial part of property that is the subject of the action is situated in this judicial district.

## FACTS RELEVANT TO ALL COUNTS

24.     Mr. Gross and 11th Property Group renovate dilapidated properties in the District of Columbia into useful and updated buildings that are both attractive and aesthetically consistent with their surrounding area.

25.     Mr. Gross is a licensed real estate agent, and Mr. Gross and his businesses purchase many of his/its properties directly from the sellers.

26.     In or around November, 2014, Mr. Gross' single member LLC, 7 Grant Circle, NW LLC, purchased a blighted property at 7 Grant Circle NW, Washington D.C. 20011 ( "7 Grant Circle"), with the intention of rehabilitating the single family home for use consistent with the residential zoning area.

27.     Mr. Gross and 7 Grant Circle NW LLC obtained the necessary permits and began the process of renovating the property at 7 Grant Circle, which involved raising the roof a small amount.

28.     Woodruff is the sole owner of 6 Grant Circle NW, Washington D.C. 20011, which is immediately adjacent to 7 Grant Circle. Woodruff's residence at 6 Grant Circle was blighted when he purchased it in March, 2010 and he proceeded to renovate it with Wright.

29.     Wright resides at 6 Grant Circle with Woodruff. Wright does not own 6 Grant Circle.

30.     Tania C. Faransso ("Faransso") and Matthew T. Gardine ("Gardine")reside at 8 Grant Circle, which is immediately adjacent to 7 Grant Circle. 8 Grant circle was already fully renovated and modernized when Gardine and Faransso purchased it in September, 2013.

31.     Wright is the managing partner and principal of architecture firm Leo A Daly's Washington D.C. office.

32.     Leo A Daly and Wright renovate buildings in the D.C. area, and compete directly with the Plaintiffs' business, in that they develop and renovate projects all over the District of Columbia.

33.     Wright has publically stated that he operates pursuant to his mantra: "I have little tolerance for people who hold onto the status quo. Change is neither good nor bad — it's inevitable."

34.     Woodruff is a real estate agent, partner and principal of Central Properties, a Washington D.C. real estate sales firm, who makes his living by facilitating sales and purchases of property throughout the District of Colombia.

35.     Central Properties and Woodruff compete directly with Mr. Gross, a licensed real estate agent, and his business, both by buying and selling properties throughout the District of Colombia.

36.      In or around December, 2014, during the renovation of 7 Grant Circle, Mr. Gross found a note  from Woodruff in 7 Grant Circle's mailbox, requesting that Woodruff be provided the doors and windows from 7 Grant Circle. Mr. Gross cancelled his previous arrangements to dispose of the windows and doors and allowed his neighbors at 6 Grant Circle to avail themselves of door frames, hardware, chair rails and moldings, doors and windows, and other objects of their own selection.

37.     After Mr. Gross allowed Woodruff to take the doors, windows, and other materials from his property, Woodruff sent an email on December 3, 2014, thanking Mr. Gross and saying, "Good luck with the renovation. I am sure we will be in touch again."

38.     Around one week after Mr. Gross provided 7 Grant Circle's materials to Woodruff, Mr. Gross received an email from Woodruff, requesting information about Mr. Gross's plans for developing 7 Grant Circle's upper level. Woodruff falsely stated in the email that he wished to get an idea of Mr. Gross's plans, so that he "could perform a similar renovation" on his property at the same time, and invited Mr. Gross over to discuss the plans for 7 Grant Circle.

39.     Mr. Gross visited 6 Grant Circle the following Saturday with his consultant Jose Abastos, in order to discuss his plans for 7 Grant Circle with his neighbor, Woodruff.

40.     Woodruff, however, had misrepresented the purpose of the meeting. Woodruff departed the room and left Mr. Gross and Mr. Abastos with Wright, who immediately began berating both Mr. Gross and Mr. Abastos, and insulting Mr. Gross's plans for 7 Grant Circle. Wright pulled out his Leo A Daly business card, flaunting his credentials and experience as an architect.

41.     Mr. Gross defended his project to Wright, explaining that his renovation was a matter of right conversion, and that his work is legal. To this, Wright stated, in a thinly-veiled threat insinuating Mr. Gross's Jewish heritage: "So was the Holocaust."

42.     Woodruff and Wright both are well over six feet tall. In addition to their verbal abuse of Mr. Gross and Mr. Abastos at their residence, both used their large stature to physically intimidate the latter.

43.     About one week after the abusive meeting at 6 Grant Circle, Woodruff demanded that Mr. Gross provide Woodruff his plans for the Grant Circle neighborhood improvements.

44.     Wright and Woodruff viewed Mr. Gross and his business as direct competition, who were successfully cutting into their potential business opportunities in their own neighborhood, and in early January, 2015, began formulating a plan to eliminate Plaintiffs' competing business.

45.    In early January, 2015, Wright and Woodruff contacted other residents in and around Grant Circle, including Beisert, Faransso, and Gardine, as well as representatives of their local ANC, ANC 4C, in order coordinate an agreement to obstruct and diminish Plaintiffs' business in Grant Circle.

46.    Beisert and his entity, Off Boundary, specialize in making applications to the District of Colombia to designate certain real properties as historic districts and/ or historic landmarks

47.    The Defendants, spearheaded by Wright and Woodruff and guided by Beisert's experience, formulated a plan to abuse the historic districting and landmarking process to obstruct Plaintiffs' work and eliminate Plaintiffs' competing business in their neighborhood, knowing that the historic district designation would restrain Plaintiffs from raising the roof at 7 Grant Circle into a then matter-of-right three unit structure, and costing Plaintiffs 7 Grant Circle NW LLC and Mr. Gross hundreds of thousands of dollars.

48.    Defendants knew that the Zoning Commission for the District of Columbia was planning on amending the D.C. municipal zoning regulation rules, so that Plaintiffs 7 Grant Circle NW LLC and Mr. Gross would not be able to renovate their structure at 7 Grant Circle into a three unit structure under the amended rules.

49.    Defendants also formulated a plan to apply to designate Plaintiffs' property at 7 Grant Circle as a historic landmark, knowing that though the landmark would not be granted, their application alone would freeze permitting and work at Plaintiffs' property, with the possibility of freezing work so long that Plaintiffs would be unable to accomplish their planned renovation under the amended zoning regulations.

50.    The owner of 16 Grant Circle NW, Washington D.C. 20011 ("16 Grant Circle) was also obtaining permits to renovate 16 Grant Circle. Wright and Woodruff viewed this property owner as

competition as well, and the Defendants, spearheaded by Wright and Woodruff, and emboldened and facilitated by Beisert, filed an historic landmark application for 16 Grant Circle.

51.     Defendants' historic landmark applications were not rooted in a preservation, as they did not similarly apply to landmark Wright and Woodruff's residence at 6 Grant Circle, which is architecturally and historically identical to 7 Grant Circle.

52.     Woodruff and Wright's recently remodeled and renovated residence at 6 Grant Circle, constant with Wrights mantra that he espouses change, illustrates the fact that Wright and Woodruff are not preservationists: they seek to selectively preserve properties in a manner that suits their pecuniary and professional interests.

53.     Faransso and Gardine's recently remodeled and renovated residence at 8 Grant Circle similarly illustrates that fact that Faransso and Gardine also seek to selectively preserve properties in a manner that suits his/her interests.

54.     Wright and Woodruff began a surreptitious campaign to foment animosity and resistance amongst ANC 4C residents toward Mr. Gross and 7 Grant Circle NW LLC, in an attempt to garner support from the community at large, and the ANC.

55.     On January 20, 2015, Wright and Woodruff invited selected members of ANC 4C to meet selected members of their neighborhood at their residence at 6 Grant Circle at what they called an "informal ANC meeting." Wright and Woodruff did not inform their neighbor, Mr. Gross and 7 Grant Circle NW LLC, about this  meeting. On information and belief, Wright and Woodruff made false and disparaging claims at the meeting about Mr. Gross and 7 Grant Circle NW LLC, in order to turn the ANC 4C residents against them.

56.     On January 23, 2015, on behalf of Leo A Daly, Wright wrote an email to Steve Calcott, an employee of the HPO of the D.C. Office of Planning, stating that he was "fearful and furious" about Plaintiffs' work in Grant Circle, and requesting a meeting "to learn what we can do to slow the permitting process."

57.     In January, 2015, Wright and Woodruff began attending various neighborhood meetings, including the monthly meetings of ANC 4C, in order to covertly foment animosity among the residents of Grant Circle toward Mr. Gross, 7 Grant Circle NW LLC, 11th Property Group, and other Plaintiffs.

58.     On January 28, 2015, Wright and Woodruff met with D.C. Office of Planning employees Steve Calcott, Kim Williams, and David Maloney at the D.C. Office of Planning. On information and belief, Wright and Woodruff made false claims about Plaintiffs and their work at that meeting, with the goal of convincing D.C. Office of Planning employees to help Wright and Woodruff freeze Plaintiffs' projects. Though this meeting directly involved Plaintiffs' rights in their property, Plaintiffs were provided no notice about this meeting, and Plaintiffs were completely unaware that a covert meeting regarding their property rights had occurred between Wright, Woodruff and D.C. Government employees.

59.     On or about January 28, 2015, 15 Grant Circle NW LLC purchased 15 Grant Circle NW, Washington D.C. 20011.

60.     On February 12, 2015, Woodruff, on behalf of Central Properties, emailed Kim Elliott of the D.C. Office of Planning, requesting that she come advocate the historic district and landmark process to the ANC 4C residents and convince the residents to support their historic district and landmark nominations. Woodruff contended that it was important for Kim Elliott to come advocate

for the historic district and landmark process before the ANC meeting on March 11, 2015, when ANC 4C would vote for the Defendants' historic district and landmark nominations.

61.    On February 13, 2015, Defendants submitted their application to the Historic Preservation Review Board ("HPRB") of the Historic Preservation Office ("HPO") to designate the selected properties with buildings bearing the addresses of 4-33 Grant Circle as an historic district. The application was authored by Beisert, Beisert's entity Off Boundary, and EHT Traceries Inc.

62.    The Defendants' historic district application made arguments concerning the larger Petworth neighborhood as a whole, and was not based on any architectural historical value of the buildings located at 4-33 Grant Circle; however, the Defendants arbitrarily limited their application to only the addresses of 4-33 Grant Circle, because they were not actually interested in historic preservation, but rather only in obstructing Plaintiffs' projects in that limited area.

63.    On February 18, 2015, Defendants submitted their application to designate 7 Grant Circle as a historic landmark. The application was authored by Beisert and Off Boundary.

64.    On February 23, 2015, Wright and Woodruff held a meeting at Petworth Methodist Church at 33 Grant Circle, NW, where Kim Williams and Kim Elliott of the D.C. Office of Planning advocated for the Defendants' historic district and landmark applications to the residents of ANC 4C. Leo A Daly provided resources for the meeting, including a screen for Kim Williams' and Kim Elliott's presentation. Though the neighborhood meeting involving the D.C. Office of Planning and ANC 4C should have been a public meeting open to all, especially the property owners with a direct interest in the historic district and landmark applications, neither Mr. Gross, nor his three entities located on Grant Circle, were invited to the meeting.

65.     As Defendants intended, their pending historic landmark and historic district applications froze all permitting activity at 7 Grant Circle, and Mr. Gross, 7 Grant Circle NW LLC, and 15 Grant Circle NW LLC were unable to obtain new permits or continue their work at their properties.

66.     On February 24, 2015, Woodruff emailed Kim Williams and Kim Elliott of the D.C. Office of Planning, on behalf of Central Properties, complaining that he saw pending reviews on the building permits at 7 Grant Circle, and stating, "It was my understanding that the landmark application [for 7 Grant Circle] halted all permit review."

67.     Not content with the obstruction caused by their historic district and landmark applications, Wright and Woodruff called the permit-issuing DCRA on behalf of themselves and their companies to demand a stop work order for 7 Grant Circle.

68.     As a building under renovation, 7 Grant Circle was exempt from D.C. vacant building status and therefore, clearly bore a "vacant building notice exemption" sticker, which was visible to Wright and Woodruff. Nonetheless, Wright and Woodruff called the DCRA again, on behalf of themselves and their companies, to falsely report that 7 Grant Circle was a vacant building in violation of D.C. Code.

69.     Mr. Gross and 7 Grant Circle NW LLC were forced to expend time and resources resolving the false stop work order and vacant building allegation brought by Wright and Woodruff.

70.     By orchestrating a exaggerated and false sense of unanimity among Grant Circle neighbors, Wright and Woodruff had successfully and surreptitiously coaxed D.C. Office of Planning Employees to campaign for their historic district and landmark applications, and against Plaintiffs.

71.     On March 8, 2015, Woodruff contacted Kim Williams and Kim Elliott of the D.C. Office of Planning, on behalf of Central Properties, explaining that despite their combined efforts, only six of the 19 owners in the proposed historic district supported the historic district.

72.     On March 11, 2015, Wright, Woodruff, Beisert, Faransso and Gardine attended the ANC 4C meeting to drum up support for their historic district and landmark applications. Defendants fomented animosity and resistance towards Mr. Gross and Plaintiffs, making false representations about Plaintiffs and disparaging their projects in order to garner the support of ANC 4C for the historic district and landmark applications, and ANC 4C voted in support of the Defendants' historic district and landmark applications.

73.     On March 19, 2015, Kim Elliott of the D.C. Office of Planning informed Woodruff that she had, at Woodruff's behest, emailed Justin Bellows of the DCRA to disparage Mr. Gross, 7 Grant Circle NW LLC, and Plaintiffs. Kim Elliott stated, regarding Mr. Gross, 7 Grant Circle NW LLC, and Plaintiffs: " I let him know HPO's concerns about the work that was being done, the illegality of how permission and permits were obtained, and general distrust we have of this developer/contractor — given how things have gone so far." Though Kim Elliott's email concerned Plaintiffs and their projects, Kim Elliott did not include Plaintiffs in her communication.

74.     Kim Elliott's unfounded statements about Plaintiffs in her email to the DCRA were based on the misrepresentations that had been provided to her by Wright and Woodruff. Indeed, neither Kim Elliott nor Kim Williams ever communicated with Mr. Gross or Plaintiffs, and instead, their contorted opinions and understanding of Plaintiffs were framed by Wright and Woodruff's misrepresentations.

75.    On March 24, 2015 the HPRB held the hearing for public comment regarding the Defendants' historic landmark application for 16 Grant Circle.

76.    At that hearing Wright, on behalf of Leo A Daly, spoke in support of the landmark designation, and perjuriously represented himself as an "elected representative" of ANC 4C, and as a representative of all the neighbors of Grant Circle. Wright was not one of the elected members of ANC 4C, and he did not represent the interests of all his Grant Circle neighbors.

77.    The Defendants' historic district and landmark applications were only the beginning of their attack on Mr. Gross and his businesses, however. After the March 24th HPRB hearing the Defendants, spearheaded by Wright and Woodruff, intensified and broadened their attack on Mr. Gross and his businesses by attacking their properties throughout the District - outside of Grant Circle - to which Wright and Woodruff had no connection.

78.    On March 26, 2015, Woodruff, on behalf of Central Properties emailed DCRA employee Delaine Englebert with the subject line "7 Grant Circle Investigation," disparaging Mr. Gross and Plaintiffs and falsely alleging that Mr. Gross and Plaintiffs were performing illegal work at completely unrelated projects at 1524 Ogden Street NW LLC, 1201 Kenyon Street NW LLC, and 4511 Iowa Ave NW LLC.

79.    Defendants attempted to eliminate any potential dissent to their historic district nomination, and attempted to prevent any potential dissenters from receiving notification of the process. For example, Wright and Woodruff attempted to prevent Father Avelino Gonzalez, the pastor of St. Gabriel's, a Catholic Church on Grant Circle, from discovering their historic district and landmark applications, even though the nearly hundred year old St. Gabriel's Church is the cornerstone of the

historic district, taking up 2.38 acres (nearly one third) of the land area which homes and buildings occupy along the periphery of Grant Circle.

80. Faransso and Gardine were parishioners at St. Gabriel's. Wright and Woodruff falsely represented to public officials, including ANC 4C commissioners, that Faransso and Gardine had notified Father Gonzalez and St. Gabriel's Church of the Defendants' historic district application, however, Wright and Woodruff were aware that Faransso and Gardine had deliberately failed to inform Father Gonzalez of the pending historic district.

81. Despite Wright and Woodruff's efforts, in late March, 2015, Father Gonzalez discovered the pending historic district nomination; Father Gonzalez also discovered that Wright and Woodruff were the ringleaders of the nominations.

82. On or about March 31, 2015 Father Gonzalez contacted Wright and Woodruff, expressing dismay that he and his parishioners, cornerstones of Grant Circle, had been invited to participate by Wright and Woodruff in their historic district nomination, which clearly did not consider the impact of the historic district nomination on the residents of the neighborhood who were less affluent than Wright and Woodruff. Father Gonzalez also expressed concern that he had been provided no notice of the HPRB hearing regarding the historic district that was scheduled for April 2, 2015.

83. On March 31, 2015, Woodruff emailed Father Gonzalez, on behalf of Central Properties, dismissing Father Gonzalez's concerns: "[Y]ou are playing all your cards...Perhaps, rather than accusing people of not caring about your African American and Hispanic parishioners, you might reflect on your own failings in following up in a timely manner."

84.     On April 2, 2015, the HPRB held the hearing for public comment regarding the Defendants' historic district nomination of the homes and structures along the periphery of Grant Circle bearing the addresses 4-33.

85.     Wright spoke again at the April 2nd HPRB hearing. At that hearing, Wright, who is the managing member of the Washington D.C. office of a major, international architecture firm engaged in constant re-development throughout the District of Colombia, falsely depicted Mr. Gross as being involved in "predatory development." Wright also falsely exaggerated the support amongst the affected residents for the historic district.

86.     Beisert also spoke at the April 2nd hearing, falsely stating that "there are no residents on the Circle, and even the churches, as they have expressed, that oppose this nomination. In fact, they are all in favor of it, as has been expressed." However, the owners of 7, 14, 15 and 16 Grant Circle and the St. Gabriel's actively opposed the historic district designation. Indeed, despite Wright and Woodruff's vitriolic campaign against Mr. Gross and Plaintiffs, only six residents out of 19 in the proposed historic district actually supported Wright and Woodruff's historic district.

87.     Despite the lack of support for the historic district by the residents, Wright and Woodruff had successfully fomented animosity amongst the commissioners of ANC 4C, who provided their support for the historic district nomination. On April 2, 2015, the same day as the hearing, the HPRB granted the Defendants' application for historic district designation of 4 - 33 Grant Circle, giving "great weight" to the ANC 4C's opinion as required by D.C. Code.

88.     On April 2, 2015, Woodruff, on behalf of Central Properties, emailed Steve Calcott of the D.C. Office of Planning, thanking him for his support with the historic district.

89. On April 3, 2015, Wright, on behalf of Leo A Daly, emailed Kim Williams and Steve Calcott of the D.C. Office of Planning, also thanking them for their support with the historic district. Further, Wright attacked Plaintiffs' projects elsewhere in Grant Circle, stating: "We heard from John Barber [the owner of 14 Grant Circle] late last week that he was being asked to sign a document allowing underpinning next door at [15 Grant Circle, which is owned by Mr. Gross and 15 Grant Circle NW LLC] — no drawings were provided him. I don't know if Jay Gross (#7 developer) is directly involved but, the return address for this LLC matches Jay's. Today, John received info/drawings that tell him that the new owner of #15 is planning a Pop-Up. There are a lot of leaks in the Dam. It appears that protecting this District will remain a fight right up to the end."

90. On April 21, 2015, on the eve of the HPRB's coming decision, Oscar Beisert and the Off Boundary Preservation Brigade delivered an email to Timothy Dennee of the DCRA apologizing for the short notice, and withdrawing the historic landmark application for 7 Grant Circle.

91. On April 23, 2015, despite the withdrawal of the Defendants' application, the Historic Preservation denied the historic landmark application for 7 Grant Circle, noting the suspicious fact that Woodruff's property at 6 Grant Circle was not also the subject of a landmark application:

> **The landmark application claims too great an architectural significance for [7 Grant Circle]- oddly without nominating its attached twin, 6 Grant Circle, which shares much of its history and character.** The nomination's most fitting characterization of the subject property's significance is captured by the following statement: 'No. 7 Grant Circle is one of two nearly identical buildings. (emphasis supplied)

92.     Even though they withdrew their landmark application for 7 Grant Circle on the eve of the HPRB decision, the Defendants had accomplished their real goal of using the application to freeze all progress toward permitting at the property.

93.     On April 27, 2015, Woodruff, on behalf of Central Properties, emailed Kim Elliott and Kim Williams of the D.C. Office of Planning, and complained that despite their successful historic district, Plaintiffs and 7 Grant Circle had obtained permits for work at 7 Grant Circle. Woodruff conceded that the only purpose of the Defendants' entire historic district nomination was to halt Plaintiffs' work at 7 Grant Circle: "Looks like they are going to issue the permits for 7 Grant Circle (despite the fact that we have never seen the underpinning plans). We may be the first historic district in history to ask for the designation to be removed. (cause there is really no point when 20% of the property in a district is already 'compromised')."

94.     In April, 2015 Mr. Gross was negotiating with John Barber, the owner of 14 Grant Circle, for the purchase of 14 Grant Circle.

95.     Woodruff learned that Mr. Gross was negotiating to purchase 14 Grant Circle, and began pressuring Mr. Barber to instead sell to another buyer through him. Woodruff wanted the commission for himself and his company, Central Properties, and he intended to obstruct Mr. Gross and his businesses from obtaining another project.

96.     On April 26, 2015, Woodruff wrote an email to John Barber explaining that he heard Mr. Barber sold his house to Mr. Gross, but nonetheless pressuring Mr. Barber to renege on his contract with Plaintiffs and either sell the house to him or to another buyer through him.

97.     Despite Woodruff's attempt to interfere with the sale, on or about May 1, 2015, Jay Gross and 14 Grant Circle NW LLC purchased 14 Grant Circle from John Barber.

98.     Wright and Woodruff hired Robert Silman Associates ("Silman"), an engineering company, to draft a report fabricating alleged shortcomings with the work at 7 Grant Circle.

99.     In early May, 2015 Wright and Woodruff met with Gary Englebert of the DCRA and falsely claimed that Mr. Gross and Plaintiffs conduct their business illegally and violate D.C. building law. Wright and Woodruff provided their Silman engineering report in support of their demand that the DCRA withdraw of all of Mr. Gross and Plaintiffs' permits in the District of Columbia.

100.    On May 11, 2015, Wright, on behalf of Leo A Daly, emailed Lynn Underwood and Gary Englebert of the DCRA, attaching their Silman engineering report, and attempted to obstruct Mr. Gross and Plaintiffs' other projects in D.C.: "The architectural review reveals a continuing pattern by this developer of misleading DCRA reviewers to achieve his ends....we strongly suggest that the other properties which are under permit review, are under construction, or have recently been redeveloped by Mr. Gross and his design team be reviewed for possible incomplete or misleading drawings. These other properties include:

• 15 Grant Circle, NW

• 1524 Ogden Street, NW

• 1201 Kenyon Street, NW

• 4511 Iowa Avenue, NW."

101.    Additionally, Wright and Woodruff misrepresented to the DCRA that Mr. Gross and 7 Grant Circle NW LLC never provided them underpinning plans for 7 Grant Circle, when, they had in fact received the underpinning plans. Indeed, the underpinning plans provided by Mr. Gross and 7 Grant Circle NW LLC formed the basis of Wright and Woodruff's Silman engineering report.

102. Beisert simultaneously campaigned against Mr. Gross and his projects over the District, making false accusations about the illegality of Plaintiffs' projects: his statements about Mr. Gross and Plaintiffs were published in an article of the May 20, 2015 issue of the Northwest Current newspaper: in that article, Beisert falsely and disparagingly claimed that Mr. Gross "appear[s] to have no respect for the will of the community or the historic fabric of the neighborhood."

103. On May 22, 2015, Woodruff, on behalf of Central Properties, delivered a series of emails to Kim Elliott of the D.C. Office of Planning disparaging Mr. Gross and 15 Grant Circle NW LLC's work at 15 Grant Circle, falsely accusing the Plaintiffs of performing work at the property without a permit.

104. Wright and Woodruff also investigated Mr. Gross's other projects in the District in order to contact Plaintiffs' neighbors and covertly coerce them to obstruct Plaintiffs work in the same manner that Defendants had.

105. In or around December, 2014, Mr. Gross and 1201 Kenyon St NW LLC purchased 1201-1203 Kenyon St NW, Washington DC 20010, in order to renovate the property.

106. Mr. Gross and 1201 Kenyon St NW LLC heard no complaints from his neighbors for over a year after they purchased the property; however, upon information and belief, Wright and Woodruff contacted the neighbors of 1201-1203 Kenyon St NW and made false claims that Mr. Gross and 1201-1203 Kenyon St NW LLC do not perform legal work.

107. After Wright and Woodruff began to interfere with Plaintiffs business interests on Grant Circle, neighbors of 1201 Kenyon St. NW began complaining to Mr. Gross and 1201 Kenyon St NW LLC about development of the Kenyon Street property, and attempted to obstruct their work there.

108. Upon information and belief, Wright and Woodruff contacted the neighbors of 4511 Iowa St, NW, and made false claims that Mr. Gross, and 4511 Iowa St NW LLC do not perform legal work.

109. After Wright and Woodruff contacted them, neighbors of 4511 Iowa St, NW began complaining to Mr. Gross and 4511 Iowa St NW LLC about development of the Iowa Street property, and attempted to obstruct their work there.

110. Upon information and belief, Wright and Woodruff contacted the neighbors of 1524 Ogden St, NW, and made false claims that Mr. Gross, and 1524 Ogden St NW LLC do not perform legal work.

## COUNT I - VIOLATION OF CLAYTON ANTITRUST ACT (15 U.S.C. § 15)
(Defendants Wright, Leo A Daly, Woodruff and Central Properties)

111. Plaintiffs hereby incorporates paragraphs 1 through 110.

112. Wright is the managing partner and principal of Leo A Daly's Washington D.C. office. Leo A Daly is an architecture firm, whose business competes directly with Mr. Gross and Plaintiffs.

113. Woodruff is a partner and principal of Central Properties. Central Properties is a real estate firm, whose business competes directly with Mr. Gross and Plaintiffs.

114. Woodruff, Central Properties, Wright, and Leo A Daly and their conspirators entered into an agreement to prevent Mr. Gross and Plaintiffs from their business of purchasing and renovating D.C. properties, which amounts to an illegal restraint of trade under 15 U.S.C. § 15

115. Defendants' goal was to benefit themselves at Mr. Gross and Plaintiffs' expense: Defendants wished to do the same business that Mr. Gross and Plaintiffs were doing in the Petworth neighborhoods and surrounding area, and hoped to interfere with Plaintiffs' business for Defendants' own gain.

116.    Defendants acted in multiple instances in furtherance of the their conspiracy: (1) Defendant Wright and Leo A Daly delivered an email to an employee of the DCRA disparaging Mr. Gross and Plaintiffs, and attacking their professional character and reputation, and denouncing Mr. Gross Plaintiffs' work at properties all over the District. Defendants intended to prevent Mr. Gross and Plaintiffs' from obtaining the necessary permits to conduct their business; (2) Wright made defamatory and harmful statements about Mr. Gross and Plaintiffs at neighborhood ANC 4C meetings; (3) Wright and Woodruff, along with other Defendants in the conspiracy, contacted other property owners that do not even reside in or near Grant Circle and made defamatory statements to them about Plaintiffs, in order to repress Mr. Gross and Plaintiffs' business; (5) Defendants applied for a baseless historic landmark designation of Plaintiffs' property at 7 Grant Circle with the sole purpose of freezing Plaintiffs' work at that property, and causing economic harm to Plaintiffs; (6) Defendants applied for a baseless historic district designation of all of homes and structures along the periphery of Grant Circle with the sole purpose of repressing Plaintiffs' work within the purported historic district area, and causing economic harm to Plaintiffs; and (7) Wright and Woodruff illegally influenced and/or coerced D.C. Office of Planning Employees to support their historic district and historic landmark applications, in violation of D.C. Code § 22-704.

117.    This agreement and acts by Defendants did indeed prevent Mr. Gross and Plaintiffs from conducting their business, and Mr. Gross and Plaintiffs have been harmed as a result, in the form of lost business opportunity, Plaintiffs' inability to realize the full value of their properties, the costs of filing to overturn revoked or suspended building permits as a result of Defendants' historic district and landmark designation, and damage to Plaintiffs' reputation.

118.    Defendants' unlawful conspiracy to interfere with Plaintiffs' business is an unreasonable restraint on interstate commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) and Section 4 of the Clayton Act.

119.    Defendants' unlawful conspiracy has consisted, among other things, of Defendants' conspiring to engage in the above alleged anticompetitive conduct for the purpose of restraining interstate commerce in the relevant markets.

120.    Defendants' actions, as alleged above, have unlawfully injured competition in and adversely affected interstate commerce and business activities in interstate commerce.

121.    Defendants willfully engaged in the actions, as alleged above, which constitute violations of Section 1 of the Sherman Act (15 U.S.C. § 1) and Section 4 of the Clayton Act , and Defendants have unreasonably restrained interstate commerce.

WHEREFORE, Plaintiffs demand that judgment be entered against Defendants, jointly and severally, in the amount of $5,000,000 plus pre- and post-judgment interest, threefold the total damage sustained by Plaintiffs pursuant to 15 U.S.C. § 15,  the costs of this action, reasonable attorney's fees, and such other and further relief as the court may deem just and proper.

## COUNT II - TORTIOUS INTERFERENCE WITH PROSPECTIVE ADVANTAGE
### (All Defendants)

122.    Plaintiffs hereby incorporates paragraphs 1 through 121.

123.    Plaintiffs' business is to renovate properties from dilapidated homes into residential properties.

124.    Plaintiffs have a background of business experience, from which it is possible to determine the amount of profits Plaintiffs would have derived from renovating their properties, had Defendants not tortiously interfered with Plaintiffs' business.

125.    The future profits from Plaintiffs' renovated properties are business expectancies which are commercially reasonable to anticipate.

126.    Defendants were aware of Plaintiffs' business expectancies and the profit Plaintiffs would derive from their properties.

127.    The Defendants intentionally interfered with Plaintiffs' business in multiple instances, with the sole purpose of harming Plaintiffs' business reputation and preventing Plaintiff from obtaining necessary permits or performing renovation at Plaintiffs' properties. For example: (1) Beisert made false and defamatory statements about Mr. Gross and his business that were published in an article of the Northwest Current on May 20, 2015, and Beisert knew these statements were false at the time he made them; (2) Wright, on behalf of Leo A Daly, delivered an email to an official of the DCRA improperly and dishonestly alleging that Mr. Gross and Plaintiff violates the law and are predatory developers; (3) Wright, on behalf of Leo A Daly, made defamatory and harmful statements about Plaintiffs at neighborhood ANC 4C meetings; (4) Wright and Woodruff and other Defendants contacted other property owners that do not even reside in or near Grant Circle and made defamatory statements to them about Plaintiffs, in order to obstruct Plaintiffs' business; (5) Defendants applied for a baseless historic landmark designation of Plaintiffs' 7 Grant Circle property, not for the purpose of preservation, but instead, for the sole purpose of repressing Plaintiffs' work at that property, and causing economic harm to Plaintiffs; (6) Defendants applied for a baseless historic district designation of the homes and structures along the periphery of Grant Circle bearing the addresses 4-33 with the sole purpose of obstructing Plaintiffs' work within the purported historic district area, and causing economic harm to Plaintiffs.

128.     Defendants' interference has damaged Plaintiffs by preventing Plaintiffs from realizing the full value of their properties.

WHEREFORE, Plaintiffs demand that judgment be entered against each and every Defendant, jointly and severally, in the amount of $5,000,000 plus pre- and post-judgment interest, the costs of this action, reasonable attorney's fees, and such other and further relief as the court may deem just and proper.

### COUNT III - ABUSE OF PROCESS
(All Defendants)

129.     Plaintiffs hereby incorporates paragraphs 1 through 128.

130.     Defendants knew that the Zoning Commission for the District of Columbia was planning on amending the D.C. municipal zoning regulation rules, so that Plaintiffs 7 Grant Circle NW LLC and Mr. Gross would not be able to renovate their structure at 7 Grant Circle into a then matter-of-right three unit structure under the amended rules.

131.     Defendants Woodruff, Wright, Beisert and Off Boundary applied for a baseless historic landmark designation of Plaintiffs' property at 7 Grant Circle with the sole purpose of obstructing and delaying Plaintiffs' work at that property, and causing economic harm to Plaintiffs. That application was authored by Defendant Beisert and Off Boundary Preservation Brigade and signed by Beisert. Upon information and belief, Woodruff, Wright, and Beisert funded the baseless historic landmark application.

132.     Defendants Woodruff, Wright, Beisert and Off Boundary applied for a baseless historic district designation of all the homes and structures along the periphery of Grant Circle with the sole purpose of obstructing and delaying Plaintiffs' work in Grant Circle, and causing economic harm to Plaintiffs. That application was authored by Defendant Beisert and Off Boundary Preservation

Brigade and signed by Beisert. Upon information and belief, Woodruff Wright and Beisert funded the baseless historic landmark application.

133.     In order to support their baseless historic landmark and historic district designations, Defendants engaged in covert communications with both ANC 4C and D.C. Office of Planning, falsely disparaging Plaintiffs. Defendants manipulated ANC 4C and D.C. Office of Planning representatives to conduct covert meetings regarding their historic landmark and district designations without providing notice to Plaintiffs.

134.     By instituting the historic district and historic landmark processes, Defendants improperly used to accomplish an improper end outside of the regular purview of those processes, and not regularly or legally obtainable, namely, to freeze permitting at 7 Grant Circle and prevent Plaintiffs from realizing the full value of their property.

135.     Defendants' historic district and landmark applications did in fact freeze all permitting at 7 Grant Circle, and has prevented Plaintiffs from realizing the full value of their property .

136.     Plaintiffs were harmed by the Defendants' abuse of process, which froze renovation at 7 Grant Circle during the pendency of the nomination, and has prevented Plaintiffs from realizing the full value of their properties.

WHEREFORE, Plaintiffs demand that judgment be entered against Defendants Wright, Woodruff, Beisert and Off Boundary , jointly and severally, in the amount of $5,000,000 plus pre- and post-judgment interest, the costs of this action, reasonable attorney's fees, and such other and further relief as the court may deem just and proper.

## <u>COUNT IV - MALICIOUS PROSECUTION</u>
### (All Defendants)

137.     Plaintiffs hereby incorporates paragraphs 1 through 136.

138.     Defendants Woodruff, Wright, Beisert and Off Boundary applied for a baseless historic landmark designation of Plaintiffs' property at 7 Grant Circle with the sole purpose of obstructing and delaying Plaintiffs' work at that property, and causing economic harm to Plaintiffs. That application was authored by Defendant Beisert and Off Boundary Preservation Brigade and signed by Beisert. Upon information and belief, Woodruff, Wright and Beisert funded the baseless historic landmark application.

139.     Defendants knew that the Zoning Commission for the District of Columbia was planning on amending the D.C. municipal zoning regulation rules, so that Plaintiffs 7 Grant Circle NW LLC and Mr. Gross would not be able to renovate their structure at 7 Grant Circle into a three unit structure under the amended rules.

140.     In order to support their baseless historic landmark designation, Defendants engaged in covert communications with both ANC 4C and D.C. Office of Planning, falsely disparaging Plaintiffs. Defendants manipulated ANC 4C and D.C. Office of Planning representatives to conduct covert meetings regarding their historic landmark designation without providing notice to Plaintiffs.

141.     Plaintiffs were not aware of Defendants' plan to file the historic landmark application, did not support the Defendants' filing of the historic landmark application, and opposed the designation of their property at 7 Grant Circle as a historic landmark by the HPRB.

142.     Defendants were told that their application was "desperate" and "a stretch" before they filed it. Defendants knew that their historic landmark application for 7 Grant Circle would fail, and they did not intend for it to succeed; there was no probable cause for the Defendants' historic landmark application for 7 Grant Circle.

143.     Defendants acted with malice in filing their historic landmark application for 7 Grant Circle.

144. Tellingly, Defendants Wright, Woodruff, Beisert and Off Boundary did not apply for the same historic landmark designation for Woodruffs own identical property at 6 Grant Circle.

145. The Defendants' baseless application froze the issuance of permits for work at 7 Grant Circle.

146. On April 21, 2015, at the last minute, Defendants withdrew their baseless landmark application of 7 Grant Circle; nonetheless, on April 23, 2015, the HPRB decided in Plaintiffs' favor, finding the historic landmark application for 7 Grant Circle meritless. In so doing, the HPRB found it noteworthy that Wright and Woodruff's nearly identical property at 6 Grant Circle was not nominated.

147. Plaintiffs were harmed by the Defendants' baseless historic landmark application, which froze renovation at 7 Grant Circle during the pendency of the nomination, and Defendants' interference has prevented Plaintiffs from realizing the full value of their properties.

WHEREFORE, Plaintiffs demand that judgment be entered against Defendants Wright, Woodruff, Beisert and Off Boundary , jointly and severally, in the amount of $5,000,000 plus pre- and post-judgment interest, the costs of this action, reasonable attorney's fees, and such other and further relief as the court may deem just and proper.

## COUNT V - CIVIL CONSPIRACY
(All Defendants)

148. Plaintiffs hereby incorporates paragraphs 1 through 147.

149. Defendants Wright, Woodruff, Leo A Daly, Central Properties, Beisert, Off Boundary, Faransso, and Gardine entered into a confederation, whereby Defendants agreed to defame Plaintiffs, devalue Plaintiffs' property, prevent Plaintiffs from obtaining permits to renovate their properties, and otherwise unlawfully restrain and interfere with Plaintiffs' business practice.

150.     In furtherance of the conspiracy, the Defendants participated in multiple unlawful acts: (1) Beisert made false and defamatory statements about Mr. Gross and Plaintiffs that were published in an article of the Northwest Current on May 20, 2015, and Beisert knew these statements were false at the time he made them; (2) Wright, on behalf of Leo A Daly, delivered an email to an official of the DCRA improperly and dishonestly alleging that Mr. Gross violates the law and is a predatory developer; (3) upon information and belief, Wright and Woodruff made false and defamatory statements about Plaintiffs at neighborhood ANC 4C meetings; (4) Wright and Woodruff, along with other Defendants in the conspiracy, contacted other property owners that do not even reside in or near Grant Circle and made defamatory statements to them about Plaintiffs, in order to obstruct Plaintiffs' business; (5) Defendants applied for a baseless historic landmark designation of Plaintiffs' property at 7 Grant Circle with the sole purpose of freezing Plaintiffs' work at that property; (6) Defendants applied for a baseless historic district designation of the homes and structures along the periphery of Grant Circle with the sole purpose of repressing Plaintiffs' work within the purported historic district area, and causing economic harm to Plaintiffs; and (7) Wright and Woodruff illegally influenced and/or coerced D.C. Office of Planning Employees to support their historic district and historic landmark applications, in violation of D.C. Code § 22-704.

151.     This agreement and acts by Defendants did indeed prevent Mr. Gross and Plaintiffs from conducting their business, and Mr. Gross and Plaintiffs have been harmed as a result, in the form of lost business opportunity, Plaintiffs' inability to realize the full value of their properties, the costs of filing to overturn revoked or suspended building permits as a result of Defendants' historic district and landmark designation, and damage to Plaintiffs' reputation.

WHEREFORE, Plaintiffs demand that judgment be entered against all Defendants, jointly and severally, in the amount of $5,000,000 plus pre- and post-judgment interest, the costs of this action, reasonable attorney's fees, and such other and further relief as the court may deem just and proper.

<u>**REQUEST FOR JURY TRIAL**</u>

Plaintiff demands a trial by jury.

Respectfully submitted

_____/s/_____
Roger C. Simmons (Bar #12195)
Gordon & Simmons, LLC
1050 Key Parkway, Suite 101
Frederick, Maryland 21702
(301) 662-9122
(301) 698-0392 (fax)
*Counsel for Plaintiffs*